TiYi–Kitani MCNAIR, Plaintiff–
Appellant,

v.

Mary B. BONAVENTURA, Judge, in her
individual and representative capacity
as Director of Lake County Juvenile
Center, Defendant–Appellee.

No. 02–1300.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 2002.

Decided Sept. 18, 2002.

Before BAUER, KANNE, WILLIAMS,
Circuit Judges.

## ORDER

TiYi–Kitani McNair appeals the district court's grant of summary judgment against her on her claim that she was discharged because she is African American, in violation of Title VII, 42 U.S.C. § 2000e *et seq.* We affirm.

## Background

In 1993 McNair began working at the Lake County Juvenile Detention Center (LCJDC) as a part-time detention officer. On June 27, 1998, she was arrested and incarcerated following a domestic dispute with her boyfriend, and failed to show up for work that day. The next day McNair's sister called McNair's immediate supervisor at LCJDC, Jamie Badanish, and informed her that McNair was incarcerated and would not be able to come to work. Badanish then informed LCJDC Superintendent Ernest Robert Bennett that

McNair had been incarcerated. On June 29, McNair's mother and grandmother met with Bennett at LCJDC and told him that McNair would be released on July 1. According to the defendants, neither McNair nor anyone else notified them that she would have any further absences. McNair continued, however, not to show up for work. Consequently, Bennett recommended to Judge Mary Bonaventura, the Director of LCJDC, that McNair's employment be terminated. Judge Bonaventura approved the recommendation. When McNair returned to work on July 7, Bennett informed McNair that her employment was terminated. According to the defendants, McNair was discharged because of her unreported absences.

Later that month, McNair filed a charge of discrimination with the EEOC, alleging that LCJDC terminated her employment because she is African American and that she "was fired for an incident [she] had off the job; yet whites who have incidents of fighting on the job were never terminated." She then filed suit in federal court against Lake County, the Lake County Board of Commissioners, and Judge Bonaventura. In her complaint, McNair disputed the defendants' assertion that they were never notified that she would be absent after July 1; McNair alleged that her mother had telephoned and informed Badanish that McNair would be absent until July 7.

On July 11, 2001, Judge Bonaventura filed a motion for summary judgment, arguing that McNair was discharged for violating LCJDC policies due to her unreported absences between July 1 and July 7 and not for discriminatory reasons. To support her motion, Judge Bonaventura attached a copy of the LCJDC employee guidelines that McNair had signed, which specified that employees must report any absences beforehand and that unreported absences may result in discharge. In addition, Judge Bonaventura attached declarations from Badanish and Bennett asserting that McNair had failed to show up for work between June 27 and July 7, and that neither she nor anyone else notified them that she would be absent between July 1 and July 7. On July 16, 2001, Lake County also filed a motion for summary judgment, arguing that it was not McNair's employer and therefore not liable under Title VII.

After granting McNair a number of extensions to respond to the summary judgment motions, the district court set a deadline of November 8. McNair failed to respond to either summary judgment motion by that date. She did, however, file a response to Judge Bonaventura's motion several days later, on November 13. On November 30, the district court stated that it would not consider McNair's untimely response and granted summary judgment for the defendants.[1] The court accepted as true the assertions in Judge Bonaventura's motion that were supported by evidence, and concluded that McNair failed to make out a prima facie case of discrimination. The court also denied Lake County's summary judgment motion as moot. On December 10, McNair then filed a motion to reconsider the district court's decision not to accept her untimely response. The district court denied the motion.

## Analysis

The preliminary issue in this case is whether the district court abused its discretion in not accepting McNair's untimely

---

1. At oral argument, McNair represented that she did not intend to appeal the district court's order with respect to Lake County or Lake County Board of Commissioners and therefore these appellees are not parties to the appeal. In a separate order we have dismissed the appeal against these appellees.

summary judgment response. McNair argues that the district court abused its discretion because she did not have time to file a response due to a delay in taking depositions and receiving transcripts (which she claims were necessary for responding to the motions), and that her untimely response did not disrupt the court's schedule because trial was not scheduled until the following month.

■ Under Federal Rule of Civil Procedure 6(b), district courts have discretion to grant or deny a party's requests for an extension in time. A district court "possess[es] great authority" in managing its caseload. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1030 (7th Cir. 1998). We review a district court's decision not to accept an untimely response for abuse of discretion, and will "intervene only when it is apparent the judge has acted unreasonably." *Id.* at 1030. In this case, the district court granted McNair several extensions in responding to the summary judgment motions. Judge Bonaventura filed her summary judgment motion on July 11, and McNair originally had 30 days to respond to that motion. N.D. Ind. L.R. 56.1. On August 6, McNair sought an extension and was given until August 22. McNair missed that deadline and sought an extension on August 23; she was given a new deadline of September 7. On September 7, she sought another extension and was given until September 10. She missed that deadline and on September 13 she sought another extension or a continuance under Rule 56(f). On October 18, the court held a status conference and gave McNair a final deadline of November 8. Without notifying the court or requesting another extension, McNair missed that deadline. She filed an untimely response on November 13. McNair does not explain why she did not seek another extension, as she had done repeatedly in the past. Given the numerous extensions already granted by the court, and McNair's disregard of the court's deadline, the district court did not abuse its discretion in refusing to consider McNair's untimely response. *See Jovanovic v. In–Sink–Erator Div. of Emerson Electric Co.*, 201 F.3d 894, 897 (7th Cir.2000) (no abuse of discretion in denying untimely response when party was given repeated extensions and missed deadlines); *Gonzalez*, 133 F.3d at 1030–31 (same); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996) (same).

Because the district court did not abuse its discretion in rejecting the late filing, summary judgment for the defendants was inevitable. Judge Bonaventura supported her motion for summary judgment with evidence confirming that McNair was discharged based on her unreported absences; therefore, McNair could not rest on the allegations in her pleadings but instead had to come forward with evidence showing there were genuine issues for trial. Fed.R.Civ.P. 56(e). Because the district court refused to accept her response, McNair has no evidence to rebut the defendants' contention that she was discharged based on her unreported absences, and the defendants are entitled to summary judgment. Fed.R.Civ.P. 56(e); *Spears*, 74 F.3d at 158.

Even if the district court had considered McNair's response, McNair still fails to make out a prima facie case of discrimination. Lacking direct evidence of discrimination, she argues her case through the indirect-proof method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To make out a prima facie case, she must show that (1) she belongs to a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated em-

ployees outside of her protected class more favorably. *Id.* at 802–03. The defendants do not dispute that McNair satisfied factors one and three.

In regard to the second factor, McNair does not argue on appeal that she met her employer's legitimate expectations. Rather, she argues that when "the dispute centers on whether the employee was dismissed for failing to meet expectations or for discriminatory reasons, it is acceptable to bypass the second prong of the prima facie analysis." To support her argument, McNair relies on a line cases in which we have excused a plaintiff in certain circumstances from having to show that she met her employer's expectations. *See Curry v. Menard, Inc.,* 270 F.3d 473, 478 (7th Cir. 2001); *Flores v. Preferred Tech. Group,* 182 F.3d 512, 515 (7th Cir.1999).

In general the *McDonnell Douglas* test requires plaintiffs to establish that they met their employers' legitimate expectations. *See, e.g., Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 328 (7th Cir. 2002); *Brummett v. Lee Enterprises, Inc.,* 284 F.3d 742, 745 (7th Cir.2002). The cases McNair relies on have carved out a narrow exception. *Curry,* 270 F.3d at 478; *Flores,* 182 F.3d at 515. Both *Curry* and *Flores* excuse plaintiffs from showing that they met their employer's expectations in one type of situation—namely, when a plaintiff alleges that other employees were also not meeting the employer's expectations but the employer selectively punished the plaintiff, or punished the plaintiff more severely, for discriminatory reasons. *Curry,* 270 F.3d at 478; *Flores,* 182 F.3d at 515; *see also Peele,* 288 F.3d at 329 (plaintiff need not show that he was meeting employer's expectations when plaintiff alleges that expectations themselves are being applied in a discriminatory manner). McNair's situation, however, is distinguishable. She does not allege, for instance, that other employees had unreported absences but were not discharged. Because she does not allege disparate punishment, she must satisfy *McDonnell Douglas's* requirement that she met her employer's legitimate expectations. Her repeated absences show that she did not meet those expectations, *see Cowan v. Glenbrook Sec. Serv., Inc.,* 123 F.3d 438, 443 (7th Cir. 1997), and therefore she cannot make out a prima facie case of discrimination.

In regard to the fourth factor, McNair argues that similarly situated employees were treated more favorably because two white employees fought at work and were not discharged, yet she was arrested for fighting off the job and was discharged. This, however, is an incorrect reading of "similarly situated." A similarly situated individual is one directly comparable "in all material respects." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002). In other words, the plaintiff must show that other employees were similarly situated in terms of performance, qualifications, and conduct. *Peele,* 288 F.3d at 330; *Snipes v. Ill. Dept. of Corr.,* 291 F.3d 460, 463 (7th Cir.2002). In this case, the defendants contend that McNair was terminated for unreported absences, and not for fighting. Therefore, McNair needed to show that other employees had unreported absences without differing or mitigating circumstances and were not discharged. *Peele,* 288 F.3d at 330. She has failed to make such a showing here; therefore, she failed to make out her prima facie case. Because McNair has failed to make out a prima facie case, we need not consider the issue of pretext. *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1011 (7th Cir. 2000).

Accordingly, the district court's judgment is AFFIRMED.